IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **BRYAN D. REBER,** | : | |
| | : | Case No. 2:14-CV-2694 |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | **Magistrate Judge King** |
| **LABORATORY CORPORATION OF** | : | |
| **AMERICA; LABORATORY** | : | |
| **CORPORATION OF AMERICA** | : | |
| **HOLDINGS; and JESSICA QUEEN,** | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter is before the Court on Defendants Laboratory Corporation of America and Laboratory Corporation of America Holdings' (collectively, "LabCorp") Motion to Dismiss Paragraphs 38 to 47 of Plaintiff's Complaint or, in the Alternative, Motion for a More Definite Statement (Doc. 8); and Defendant Jessica (Imes) Queen's[1] Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 9.) For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendant LabCorp's Motion to Dismiss Paragraphs 38 through 47 of the complaint; **DENIES** Defendant LabCorp's Motion for a More Definite Statement; and **DENIES** Defendant Queen's Motion to Dismiss for Lack of Personal Jurisdiction.

### I. BACKGROUND

Plaintiff, Bryan D. Reber, commenced this personal injury, medical negligence, and wrongful death action against Defendant LabCorp and one of LabCorp's cytotechnologists, Jessica Queen, after the death of his wife, Lisa Kay Reber. (Compl., Doc. 1 ¶ 1.) Plaintiff

---

[1] Plaintiff's complaint refers to Ms. Queen as Jessica Imes. Since the events giving rise to this lawsuit, Ms. Queen has married and changed her legal surname to Queen.

1

alleges the following facts in his complaint. On April 11, 2011, Ms. Reber's gynecologist, Dr. Shelley Thompson, performed a Pap smear on her in Fairfield County, Ohio and sent the specimen on a slide to Defendant LabCorp for testing and interpretation. (*Id.* ¶¶ 12, 14.) Defendant Queen tested the Pap smear slide at LabCorp's Charleston, West Virginia facility and signed the Pap Smear Report, indicating that it tested "negative for intraepithelial lesion and malignancy," which indicates a normal result. (*Id.* ¶ 17.) No physician reviewed the slide. (*Id.* ¶ 16.) Defendant LabCorp sent the results to Dr. Thompson. (*Id.* ¶¶ 17-18.) In fact, the slide revealed abnormalities. (*Id.* ¶ 18.) Plaintiff alleges that Defendant Queen was negligent and failed to exercise reasonable care in interpreting and reporting the results of the slide, which caused the delay in diagnosing and treating Ms. Reber's cervical cancer and led to her death. (*Id.* ¶¶ 18-20.)

Plaintiff further alleges, in paragraphs 38 to 47 of the complaint in a section titled "Claims for Relief of Plaintiff Against LabCorp," that he is entitled to punitive damages because LabCorp's failure to exercise reasonable care in interpreting Ms. Reber's Pap smear slide was "a product of LabCorp's systemic and intentional business practice that places LabCorp's interest before the welfare of the patients." (*Id.* ¶ 39.) Plaintiff alleges that LabCorp fails to provide sufficient educational instruction to its cytotechnologists and to make downward adjustments in the number of slides each cytotechnologist is required to screen even when the cytotechnologists' error rates are high. (*Id.* ¶¶ 41-43.)

Plaintiff's complaint alleges that this Court has personal jurisdiction over Defendant Queen, a LabCorp cytotechnologist who is a resident of West Virginia, because she: (1) committed a tortious act and/or omission in Ohio; (2) injured Ms. Reber in Ohio; (3) caused treatment and/or care to be rendered to Ms. Reber in Ohio; (4) performed written Pap smear

reports, analysis, recommendations, and opinions for use in Ohio; and (5) engaged in business activities in Ohio, including consulting with Ohio physicians by phone and/or providing reports, recommendations, and opinions for use in treating Ohio patients in Ohio. (*Id.* ¶ 10.)

Defendant LabCorp filed a Motion to Dismiss Paragraphs 38 to 47 of Plaintiff's Complaint, or, in the Alternative, a Motion for a More Definite Statement. (Doc. 8.) Defendant Queen filed a Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 9.) In support of her motion, she submitted an affidavit attesting that she: (1) has resided in West Virginia continuously since 2003 (Doc. 9-1 ¶ 2); (2) works exclusively at LabCorp's Charleston, West Virginia facility (*id.* ¶ 4); (3) is a salaried employee and is not paid based on the number of cytology specimens she screens (*id.* ¶ 6); (4) screens specimens from many different states without any control over the state from which the specimen was collected (*id.* ¶ 7); (5) has not regularly done or solicited business, engaged in any other persistent course of conduct, or derived revenue from goods used or services rendered in Ohio (*id.* ¶ 12); (6) did not travel to Ohio in connection with Ms. Reber's 2011 Pap smear slide or for any other purpose related to Ms. Reber's treatment (*id.* ¶ 13); and (7) does not consult or communicate directly with physicians in her role as a cytotechnologist. (*Id.* ¶ 14.)

## II. ANALYSIS

### A. Defendant LabCorp's Motion to Dismiss

LabCorp argues that paragraphs 38 through 47 of Plaintiff's complaint must be dismissed because: (1) punitive damages cannot be a stand-alone cause of action under Ohio law; (2) these allegations have no plausible connection to Plaintiff's underlying negligence claim; (3) the allegations fail to infer actual malice as required to state a claim for punitive damages; and (4)

3

Plaintiff has not stated a claim for fraud under the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

*1. Standard of Review*

The Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Thus, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations need not be detailed but must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In addition, Federal Rule of Civil Procedure 9(b) requires that "in any complaint averring fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (quoting Fed. R. Civ. P. 9(b)). The requirement "reflects the rulemakers' additional understanding that, in cases involving fraud and mistake, a more specific form of notice is necessary to permit a

defendant to draft a responsive pleading." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (internal quotation marks omitted). The Sixth Circuit has explained that to satisfy Rule 9(b), a plaintiff must at a minimum "allege the time, place, and content of the alleged misrepresentation" as well as "the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (internal citations omitted). Plaintiffs may plead fraud based "upon information and belief," but the complaint "must set forth a factual basis for such belief, and the allowance of this exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations*." Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 878 (6th Cir. 2006) (internal quotation marks omitted).

A complaint's failure to comply with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6). *United States ex rel. Howard v. Lockheed Martin Corp.*, 499 F. Supp. 2d 972, 976 (S.D. Ohio 2007).

### 2. Plaintiff's Punitive-Damages Claim

Punitive damages need not be specially pleaded under Ohio law, but a plaintiff must allege facts in the complaint sufficient to raise an inference of actual malice. *Lum v. Mercedes Benz USA, L.L.C.*, No. 3:05-cv-7191, 2006 WL 1174228, at *2 (N.D. Ohio Apr. 28, 2006) (citing *Bell v. Joecken*, No. 20705, 2002 WL 533399, at *1 (Ohio Ct. App. Apr. 10, 2002)). In Ohio, actual malice is defined as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Stuckey v. Online Resources Corp.*, 909 F. Supp. 2d 912, 948 (S.D. Ohio 2012) (citing *Preston v. Murty*,

512 N.E.2d 1174 (Ohio 1987) (syllabus)).  Mere negligence is insufficient to support an award of punitive damages.  *Preston*, 512 N.E.2d at 1176.

      a.  <u>Plaintiff's Punitive-Damages Claim is Not a Stand-Alone Claim</u>

Ohio law does not recognize a stand-alone cause of action for punitive damages; proof of actual damages is a necessary predicate for an award of punitive damages.  *Moskovitz v. Mt. Sinai Med. Ctr.*, 635 N.E.2d 331, 342 (Ohio 1994); Ohio Rev. Code § 2315.21(C)(2).  Paragraphs 38 to 47 of Plaintiff's complaint contain factual allegations that make clear that Plaintiff's request for punitive damages is not a stand-alone cause of action but instead seeks to recover punitive damages for his negligence claims.  LabCorp relies on a case in which a court dismissed a stand-alone claim for punitive damages, which stated only that the defendant "demonstrate[d] a conscious disregard for the rights and safety of plaintiffs and the rest of the public."  *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 647 (N.D. Ohio 2014).  But in *Brown*, the court noted that its dismissal of this claim would "not preclude plaintiffs from recovering punitive damages should they prove their negligence claims and introduce evidence warranting punitive damages."  *Id.*  Here, because punitive damages are available in negligence actions[2] under Ohio law, and because Plaintiff's complaint indicates that he seeks punitive damages for his negligence claims, the punitive-damages claim is not a stand-alone claim.

---

[2] LabCorp is correct that punitive damages are unavailable on a wrongful death claim under Ohio law.  *See* Ohio Rev. Code § 2125.02(B); *Rubeck v. Huffman*, 374 N.E.2d 411, 413 (Ohio 1978) (limiting recovery in wrongful-death actions to compensatory damages).  However, because Plaintiff's claim for punitive damages is tied to his negligence claim and not his wrongful death claim, punitive damages are still available in this action.  *See Harding v. Transforce, Inc.*, No. 2:11-cv-244, 2012 WL 628747, at *9 (S.D. Ohio Feb. 27, 2012) ("[T]his action is not properly categorized as exclusively a wrongful death action.  Plaintiff has alleged claims for relief against [Defendant] that sound in negligence and reckless conduct, where punitive damages may be available.").

### b. Plaintiff's Claim for Punitive Damages is Tied to His Negligence Claim

Punitive damages may be awarded for acts different than those directly causing compensatory damages, "so long as the punitive damages flow from a course of conduct related to the compensatory damages." *Apel v. Katz*, 697 N.E.2d 600, 608 (Ohio 1998).

LabCorp argues that Plaintiff's complaint improperly pleads punitive damages based on harm to third-party victims. *See Philip Morris USA v. Williams*, 549 U.S. 346, 354-55 (2007) (holding that punitive damages may not be awarded for the purpose of punishing a defendant for harm caused to third parties although evidence of such harm may be introduced to show the reprehensibility of a defendant's conduct); *see also In re E.I. du Pont de Nemours and Company C-8 Personal Injury Litigation*, No. 2:13-cv-0170, 2015 WL 5882084, at *3-4 (S.D. Ohio Oct. 5, 2015). But although Plaintiff mentions other lawsuits filed against LabCorp in his complaint, he also alleges specific facts that tie his negligence claim to his claim for punitive damages. Specifically, Plaintiff contends that Defendant Queen's failure to exercise reasonable care in interpreting Ms. Reber's slide was the result of LabCorp's practice of requiring cytotechnologists to review large numbers of slides each day. (Doc. 1 ¶¶ 39-43.) Plaintiff further alleges that LabCorp provides insufficient continuing education to its cytotechnologists and that when screening errors are discovered, cytotechnologists are not given necessary instruction to explain how they erred. (*Id.* ¶ 42.) Finally, Plaintiff argues that LabCorp has been on notice of errors made by its cytotechnologists in the form of other lawsuits and has failed to change its procedures to ensure that such errors are less likely to occur. (*Id.* ¶ 40.) If proven, these acts "flow from a course of conduct" related to the allegedly negligent misinterpretation of the slide. *Apel*, 697 N.E.2d at 608.

LabCorp takes issue with the similarity between Plaintiff's punitive-damages claim and that of other plaintiffs who sued LabCorp in federal district court in Georgia, and points out that the Georgia plaintiffs ultimately abandoned their request for punitive damages at the summary-judgment stage.  *See* Pls.' Resp. in Opp'n to LabCorp's Mot. For Summ. J., Dkt. 107 at 6, *Emerson v. Laboratory Corp. of Am.*, No. 1:11-cv-1709 (N.D. Ga. Nov. 5, 2012).  However, in granting the *Emerson* plaintiffs leave to amend their complaint in order to plead a punitive-damages claim with similar language to Plaintiff Reber's, that court found that the amended complaint's "allegations that the failure of Defendant's cytotechnologists to correctly interpret the December 2008 slide was due to either a failure to adjust the number of slides screened based upon cytotechnologists' error rates or to having failed to actually screen the slide would support an award of punitive damages, if proven."  Order granting Pls.' Mot. for Leave to File Second Am. Compl., Dkt. 16 at 3, *Emerson v. Laboratory Corp. of Am.*, No. 1:11-cv-1709 (N.D. Ga. Aug. 8, 2011).  Here, the Court finds that Plaintiff Reber's complaint also supports a claim for punitive damages that flow from a course of conduct related to his negligence claim.

LabCorp also argues that Plaintiff has not alleged facts that would establish proximate cause, which is a required element to prove a negligence claim against LabCorp.  *See Muissvand v. Davis*, 544 N.E.2d 265, 270 (Ohio 1989) ("To establish actionable negligence, one must show in addition to the existence of a duty, a breach of that duty and injury resulting proximately therefrom.").  This argument is not well taken.  Plaintiff states that the failure of LabCorp and its agents to use reasonable care in interpreting Ms. Reber's slide was proximately caused by the systemic business practices relating to lack of training and failure to make downward adjustments in the number of slides to be screened by its cytotechnologists, despite high error

8

rates. (Doc. 1 ¶¶ 39, 42-43.) These allegations are sufficient to state a negligence claim against LabCorp.

### c. Plaintiff States a Punitive-Damages Claim

Plaintiff has alleged that LabCorp's misinterpretation of the slide was a result of either its refusal to correct its screening practices or a false report based on a fraudulent assertion that the cytotechnologist screened the slide, and that in either case, "such conduct shows willful misconduct and malice, which raises the presumption of conscious indifference to consequences and as such justifies an award of punitive damages." (Doc. 1 ¶¶ 46-47). An "award of punitive damages based on conscious disregard malice requires 'a positive element of conscious wrongdoing. This element has been termed conscious, deliberate or intentional. It requires the party to possess knowledge of the harm that might be caused by [its] behavior.'" *Malone v. Courtyard by Marriott L.P.*, 659 N.E.2d 1242, 1247-48 (Ohio 1996). As to the defendant's state of mind, "actual malice can be inferred from conduct and surrounding circumstances which may be characterized as reckless, wanton, willful or gross." *Villella v. Waikem Motors, Inc.*, 543 N.E.2d 464, 466-67 (Ohio 1989).

Courts have clearly held that a claim for punitive damages cannot survive if a plaintiff only requests such damages in a prayer for relief without supporting the pleading with factual content that, if proven, would warrant punitive damages. *See Flex Homes, Inc. v. Ritz-Craft Corp. of Mich., Inc.*, 721 F. Supp. 2d 663, 675-76 (N.D. Ohio 2010). But here, Plaintiff supports his request for damages with factual allegations, and he convincingly points to several cases where courts have found that punitive damages were properly pleaded by alleging willful misconduct in factual circumstances that are analogous to those at hand. For instance, in *Lucarelli v. DVA Renal Healthcare, Inc.*, Plaintiffs stated a claim for punitive damages when

9

they alleged that the defendant, a kidney hemodialysis center, "acted in a manner that was 'outrageous, reckless, malicious, wanton and/or done in a manner evincing reckless disregard for the consequences thereof'" because the defendant knew that the hemodialysis treatments were unsafe and likely to cause substantial harm to patients. No. 2:08-cv-0049, 2008 WL 2924162, at *6 (S.D. Ohio July 23, 2008). In *McGue v. Kingdom Sports Center*, a plaintiff alleged that the defendant placed a basketball hoop and backboard system on a court in such a manner that the defendant knew or should have known of the hazard to players. No. 1:14-cv-162, 2014 WL 6901705, at *2 (S.D. Ohio Dec. 5, 2014). The court found that these facts were sufficient to defeat the defendant's argument that "Plaintiff fails to allege any facts to support the conclusion that Defendant's conduct rose above the level of ordinary negligence and to the level of recklessness, intentional acts, willful and wanton behavior or gross negligence." *Id.*; *see also Harding*, 2012 WL 628747, at *9 ("Plaintiff has alleged that [Defendant] acted with such recklessness and disregard for the safety of the individuals working at their facility that the death of one of those individuals ensued.").

    LabCorp's attempts to distinguish these cases are unavailing. Moreover, contrary to LabCorp's assertion, this is not a case where Plaintiff's allegations of malice consist solely of an argument that Defendants have failed to implement "an additional policy [that] is required by the federal regulations." *See Giebel v. Lavalley*, 5:12-cv-750, 2013 WL 6903784, at *13 (N.D. Ohio Dec. 31, 2013). Plaintiff has alleged facts that, if proven, could show that LabCorp consciously disregarded Ms. Reber's safety by failing to modify its slide-reviewing procedures and improve the training of its cytotechnologists.

### 3. Plaintiff's Fraud Allegations in Paragraph 46

Finally, LabCorp contends that Paragraph 46 of the complaint does not satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Ohio law requires that to state a claim for fraud a plaintiff must allege, in specific terms:

> 1) a representation or, if a duty to disclose exists, concealment of a fact; 2) material to the transaction at hand; 3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; 4) with the intent to mislead another into relying on the representation; 5) justifiable reliance on the representation or concealment, and 6) a resulting injury proximately caused by the reliance.

*Dana Ltd. v. Aon Consulting, Inc.*, 984 F. Supp. 2d 755, 769 (N.D. Ohio 2013) (*citing Burr v. Bd. Of Cnty. Comm'rs of Stark Cnty.*, 491 N.E.2d 1101, 1105 (Ohio 1986)).

Paragraph 46 of Plaintiff's complaint states:

> To report the Slide as normal, as was done here, can only be the product of LabCorp's systemic deficiencies and practices, which LabCorp refuses to correct, causing high screening error rates or, in the alternative, the report is a false report based upon the fraudulent assertion that the cytotechnologist screened the slide when in fact it was not screened at all.

(Doc. 1 ¶ 46.) Plaintiff also states earlier in the complaint that LabCorp "has acted in a manner that demonstrates malice, or knowingly authorized, participated in, or ratified actions or omissions of its agents and/or employees that demonstrate malice." (*Id.* ¶ 38.) Plaintiff's fraud claim does not articulate with sufficient specificity any facts to support an inference that Ms. Queen's report was fraudulent or that the Pap smear slide was not in fact screened. It is not clear from the complaint that Plaintiff actually intended to plead a claim for fraud, but in any event, Plaintiff does not properly state such a claim. Therefore, the Court will dismiss Plaintiff's fraud

11

claim in paragraph 46 under Rule 12(b)(6) and otherwise deny LabCorp's Motion to Dismiss Paragraphs 38 through 47 of Plaintiff's Complaint.

LabCorp's Motion to Dismiss Paragraphs 38 through 47 of Plaintiff's Complaint is **DENIED in part** and **GRANTED in part**.

### B. Defendant LabCorp's Motion for a More Definite Statement

LabCorp has also filed, in the alternative, a Motion for a More Definite Statement under Federal Rule of Civil Procedure 12(e), which is appropriate when a pleading to which a responsive pleading is allowed "is so vague or ambiguous that the [opposing] party cannot reasonably prepare a response." Because the Court finds that paragraphs 38 to 47 properly state a punitive-damages claim against LabCorp, the Motion for a More Definite Statement is **DENIED**.

### C. Defendant Queen's Motion to Dismiss for Lack of Personal Jurisdiction

#### *1. Standard of Review*

A federal court sitting in a diversity matter may exercise jurisdiction over a defendant if jurisdiction is "both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002). The party seeking to establish the existence of personal jurisdiction bears the burden to establish such jurisdiction. *Beydoun v. Wataniya Rest. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014). When, as here, a district court rules on a motion to dismiss without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the nonmoving party. *Id.* To defeat such a motion, Plaintiff need only make a prima facie showing of jurisdiction. *Id.* When jurisdiction is

challenged in a motion to dismiss, however, "the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012) (quoting *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991)).

### 2. Ohio's Long-Arm Statute

Ohio's long-arm statute provides that a court may properly exercise personal jurisdiction over a nonresident defendant who meets one of nine enumerated criteria. Ohio Rev. Code § 2307.382(A). The parties dispute whether §§ 2307.382(A)(1), (3), and (4) provide a basis for jurisdiction over Defendant Queen. These sections of the long-arm statute provide as follows:

> (A) [a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> (3) Causing tortious injury by an act or omission in this state;
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

Ohio Rev. Code  2307.382(A).

The Court first turns to the question of whether it has jurisdiction over Defendant Queen under Ohio Rev. Code  2307.382(A)(4). The complaint alleges that Defendant Queen negligently interpreted Ms. Reber's slide in West Virginia, and Plaintiff argues that the Court has jurisdiction over her because she engaged in business activity by preparing Pap smear reports for use in Ohio and providing interpretations to Ohio patients and physicians through these reports. Defendant Queen counters that she had no control over which Pap smear slides she screens,

13

derives no revenue from Ohio because she is paid a fixed salary, and pays no attention to the geographic origination of the slides.

Neither the Sixth Circuit nor other federal courts in Ohio have considered a set of facts analogous to these, where a nonresident employee of a medical provider has sought dismissal for lack of personal jurisdiction after allegedly committing a tortious act outside the forum state by incorrectly interpreting a patient's lab sample.  In a similar case, however, the Tenth Circuit found that personal jurisdiction existed where a nonresident doctor from Texas accepted a lab sample from a doctor in Oklahoma, tested the sample, and signed a report, later found to be inaccurate, establishing the thickness of the lesion found on the patient, which he then mailed to the Oklahoma doctor, "through the mail, knowing its extreme significance and that it would be the basis of [the plaintiff's] further treatment there." *Kennedy v. Freeman*, 919 F.2d 126, 129 (10th Cir. 1990).  This case is nearly on all fours with *Kennedy*.  As in that case, Defendant Queen did not solicit the sample from Ms. Reber's doctor, but she accepted it, tested it, signed a report attesting to a normal result, and submitted that report through LabCorp's computerized system, which triggered the sending of the report to Ms. Reber's doctor.  Moreover, Defendant Queen presumably would have known that the test results would be used to determine an appropriate course of treatment for Plaintiff.  Another federal court found personal jurisdiction over a nonresident defendant in a similar case where samples were sent to an out-of-state lab, noting that the doctors who signed off on the lab reports had clearly and purposefully directed their actions toward the forum state because they had "routinely and willingly accepted the samples from [the forum state]," and had "made a diagnosis and then sent it through the mail knowing its extreme significance and knowing it would be the basis of [the plaintiff's] further

14

treatment." *Sanders v. Ball*, No. 98-2715, 1999 WL 397921, at *4 (E.D. La. June 11, 1999). The court also noted:

> Obviously, as a lab that analyzes such tissue, these doctors do not "treat" the patients affected by their diagnosis, rather the treatment and thus the effect of their diagnoses by definition occurs wherever the specimen originates. Certainly, as such, Dr. Ball and Dermatopathology can reasonably anticipate being hailed into court in [the forum state].

*Id.* at 3.  Finally, the court pointed out that the doctors generated revenue for their work interpreting samples from the forum state.

Defendant Queen tries to distinguish these cases by arguing that she does not communicate directly with Ohio physicians or patients or derive revenue from them, and she, unlike her employer LabCorp, did not "willingly accept" Ms. Reber's sample.  But she is paid a salary for her work, and like the physician in *Kennedy*, she presumably knew that the sample she was examining came from out of state.  *Cf. Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1118 (6th Cir. 1994) ("[Defendant] did not regularly transact or solicit business in Ohio or engage 'in any other persistent course of conduct' there.").  Even if, as she says in her affidavit, she paid no attention to Ms. Reber's address as listed on the report, she would have known that many of the samples she screened were sent from patients in Ohio and other states.  These facts are sufficient to show that Ms. Reber "regularly does . . . business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in" Ohio.  Ohio Rev. Code  2307.382(A)(4).

Therefore, the Court finds that Ohio law permits personal jurisdiction over Defendant Queen.  Because the Court finds that Defendant Queen is subject to personal jurisdiction under § 2307.382(A)(4), it need not reach the question of whether Ms. Queen is also subject to personal jurisdiction under §§ 2307.382(A)(1) and (3).

*3. Due Process*

Due process requires that in order to subject a nonresident defendant to a judgment, she must have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  The Sixth Circuit has adopted a three-part test for determining whether specific jurisdiction exists to comport with the Due Process Clause:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968).  The Court considers each in turn.

a. <u>Purposeful availment</u>

The purposeful availment requirement serves to ensure that "a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721-22 (6th Cir. 2000).  In order to determine whether a defendant has "purposefully availed itself of a forum a court must evaluate 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . .'" *Reynolds*, 23 F.3d at 1118 (holding that the court lacked jurisdiction over the defendant International Amateur Athletic Federation, which had only "a minimal course of dealing" with the plaintiff in the form of providing money to the plaintiff in Ohio to travel to track events).  In *Reynolds*, the court also held that the "unilateral activity" of

16

the plaintiff, an athlete who resided in Ohio, was "not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction," where the defendant, an athletic federation, did not actually transact any business with the plaintiff in Ohio. *Id.* at 1118-19 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

Other courts have interpreted "fortuitous" contacts to be those where a defendant did not purposefully direct his contacts to the forum state. *See Sanders*, 1999 WL 397921, at *5 ("This case is not analogous to the instance where a patient purposely goes to another state, is treated there and then returns to the home state and sues the out of state doctor for malpractice. The course of conduct presented here cannot be said to be random, fortuitous or a unilateral act of plaintiff."). Here, Ms. Reber's treating physician sent her slide to the lab in West Virginia; the cytotechnologist reviewed her slide with the knowledge that Ms. Reber lived in Ohio and that as a cytotechnologist she reviewed many slides from other states; and she earned a salary for her work. Defendant Queen purposefully availed herself of the privilege of acting in Ohio.

### b. Arise from activities in forum state

The Sixth Circuit has held that where "a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996). Here, where Plaintiff's negligence claim arises from Defendant Queen's interpretation of the slide and the resulting report that she issued. Defendant Queen's allegedly tortious act of misinterpreting the slide could not have happened if she had not accepted the slide of an Ohio patient. *See Creech v. Roberts*, 908 F.2d 75, 80 (6th Cir. 1990), *overruled on other grounds by Goldstein v. Christiansen*, 638 N.E.2d 541 (1994) (holding that the defendant's allegedly tortious act against

17

the plaintiff would not have happened if the defendant had not advertised on a television program that it knew would be broadcast widely, including in Ohio); *Javitch v. Neuma*, No. 3:04-cv-1487, 2006 WL 240580, at *4 (N.D. Ohio Jan. 31, 2006).

### c. Substantial enough connection

Finally, the Court must determine whether there is a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *S. Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968). When the first two prongs of the due process inquiry have been satisfied, Ohio courts will "presume the specific assertion of personal jurisdiction was proper." *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998). In making this reasonableness inquiry, courts are to consider several factors, "including 'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.'" *CompuServe*, 89 F.3d at 1268 (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169-70 (6th Cir. 1988)). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional." *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985).

Ohio has an "interest in protecting its citizens and preventing malpractice." *Sanders*, 1999 WL 397921, at *5; *see also Kennedy*, 919 F.2d at 129 ("[W]hen a doctor purposefully directs her activities at the forum state, that state has a greater interest in deterring medical malpractice against its residents."). Defendant Queen, who is represented by the same counsel as LabCorp, has not shown that defending against these claims in Ohio while living in West

18

Virginia, a bordering state, will be overly burdensome.  Weighing these interests, and taking into account the presumption of reasonableness that arises from the Court's finding of purposeful availment and harm arising out of Defendant Queen's contacts with Ohio, the Court finds that jurisdiction over her is reasonable.

Accordingly, this Court's exercise of personal jurisdiction over Defendant Queen comports with both Ohio law and the Due Process Clause.  Defendant Queen's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**.

### III.  CONCLUSION

For the reasons stated above, Defendant LabCorp's Motion to Dismiss Paragraphs 38 through 47 of Plaintiff's Complaint is **GRANTED in part** and **DENIED in part**; Defendant LabCorp's Motion for a More Definite Statement is **DENIED**; and Defendant Queen's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**.

**IT IS SO ORDERED.**

    <u>  s/ Algenon L. Marbley       </u>
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  November 13, 2015**